We thought y'all were just spectators that wanted to see what we were doing this morning. We had no idea that everybody back there on that side was in our final case. Could we save the best for last? That's it. All right. Everybody in place? All right. Mr. Levinger? Thank you, Your Honor. May it please the Court, I'm Jeff Levinger for Appellant Jane Doe. When you review the District Court's opinion in this case, which held that Sanctuary had no duty to defend or indemnify PPI, I think you'll find three mistakes that the Court made over and over again that taint every one of its rulings. First off, the Court misread Doe's petition. The Court read in allegations that were not there, and the Court read out allegations that were there. The Court misconstrued the policy. Most notably, the Court did so by treating exclusions for intentional injury as if it was an exclusion for intentional act. And those are obviously two different things. Intent to injure is very different from an intent to act. The injury was nonintentional? What are you saying now? Well, I'm saying that the exclusions in this case, Judge Jolly, dealt with an intent to injure. The first exclusion was expected or intended injury. The second exclusion was knowing violation of rights of another, which required knowledge of injury. How does that translate now? Making that argument, how does that translate to these facts so as to vitiate the exclusion clause? Well, our position is that those exclusions do not apply at all. Judge Godbee looked at it as if it were intentional acts. I want you to tell me the facts in this case. In other words, as I understand the facts, and you can tell me if I'm wrong, but the facts here are the woman was raped, and there's evidence that there was a plan out to rape her from—to have sex with her, I suppose, from the beginning. No, sir. And so there was—well, I mean, from—what were they applying? No, Your Honor. They were applying her with liquor in order to determine whether she would be a good waitress somewhere? No, Your Honor. What was the motive in all of that? Well, what happened was that she came out of the premises with two gentlemen, one of whom was the owner of the property, but he was off duty that day. He had been drinking all afternoon. She was 18 years old. They, in full view of the manager and the employee of the establishment, PPI, they over-served her with alcohol. That's number one. Number two, they allowed her to remain on the premises in the presence of these two guys who were themselves becoming drunk. Number three, and this is very significant, a very significant act, they allowed her to leave with these two drunken gentlemen rather than calling her a cab or notifying somebody for a condition, and that's important because— Derry was not a vice principal. Well, Derry not only did—was there not an allegation or proof that he was not a vice principal, but— They said he was owner. Does that help? It doesn't help because there are four categories of vice principals in Texas. Owner is not one of them, and there's no allegation that he fit within these four categories. More importantly, I think, while Judge Godbee assumed that everything and anything an alleged vice principal does is imputable to the corporation, that is not Texas law. Texas law is to the contrary, that if a vice principal, even assuming somebody is a vice principal, if they're acting in a personal capacity— Can we test a little bit the intentional aspect of this? If there had been a car accident, we're talking about a different category of cases. They let her go off. She was intoxicated with two intoxicated men. What if they had taken her six blocks away and beaten her and not raped her? I'm not sure that would make a difference, Judge Owen. The significant thing here is what happened on the PPI premises, and looking at the inspected— So you're responsible for any time you allow an intoxicated patron to leave with other intoxicated patrons, and you're responsible for whatever happens to them regardless if they're murdered, raped, beaten? No, I'm not saying that. I'm saying that there was an allegation and proof of a singular act here of negligence on the part of PPI, and that was allowing her to leave the premises with two drunken adults without calling her a cab. But for that, none of the rest of it would have happened. The rape would not have happened. That's the but for. I'm saying that alone opens them up to liability if she's murdered, if she's beaten, if she's raped. They're supposed to foresee that, and they're responsible for an intentional act of that. That's your position. Well, you're talking about the underlying allegations. The negligence is—there are multiple acts of negligence here, but one is allowing her to leave the premises with two drunken adults irrespective of what then may have happened. But for that act, the sexual assault would not have occurred, and the point is when we're talking about these coverage issues and exclusion issues, that act alone is covered because it's bodily injury that arose from an occurrence. At the same time, the exclusion doesn't apply because there's no allegation here, there's no proof here that PPI or its managers or employees who let her leave expected or intended injury. That's the key to this exclusion. It's not an intentional acts exclusion. It's expected or intended injury, and there's no allegation or proof that they expected or intended injury. Indeed, for that matter, and this is interesting, there's no allegation or proof that even Deary himself expected or intended the injury that ultimately happened while he was on the premises. Now, to be sure, off the premises at the hotel where he sexually assaulted her, he clearly did expect or intend the injury, but— Let me get back to your negligence cause of action. That's what I'm hoping. You're saying you're liable in negligence for intentional acts that another does off the premises just because you allowed a patron to leave in an intoxicated state. Well, that's tantamount to a dram shop case. Do you have any specific authority relating to facts similar or identical to these that support your argument? Nothing quite similar to this, Judge Galley. This is a fairly unusual situation, but I don't think there's any question, and even Judge Godbee assumed it, that you have coverage under coverage A and coverage B. Then you start talking about these exclusions, the liquor liability exclusion. Actually, it's a liquor liability endorsement, and it's—it oddly begins with an exclusion, but then that exclusion is completely eliminated if you have a products completed operation hazard, PICO. It's a very broad provision applying to any good or product sold, handled, et cetera. And clearly the allegations here implicate the PICO provision because beer was served, and the allegations that the bodily injury arose from PPI's distribution of beer, and it occurred after PPI relinquished control of that beer. That itself triggers the PICO provision. That should be the end of the analysis.  The woman who left the premises alone went home, and her boyfriend raped her. Well, in a—with respect to a negligence cause of action, I would submit that's unforeseeable, most likely. Tell me why this is different. Well— Because it was her intoxicated state that overrode her ability to consent or not consent. So tell me the difference. Well, of course, in analyzing coverage, we don't necessarily look at the merits of the underlying cause of action, but something is foreseeable. And I do think letting her leave the premises with two drunken adults without calling a cab or calling somebody responsible for her can lead to negligence, underlying negligence. But the point is just because that may be foreseeable for approximate cause purposes— Why is it negligent? What duty did he have to the woman, to the victim? Well, PPI had a duty because she was an invitee on the premises, and the state trial court found negligence. I mean, would he—but what would the manager of PPI have been expecting to do? I mean, retain her there? I mean, to effectively arrest her? And so you can't leave? Or what would have been the obligation that would have exonerated them from any liability in your view? Well, we need to look at the petition because we test coverage against the petition. We need to look at the state court's findings of fact and conclusions of law. And in both, she alleged, and the state trial court found, that PPI breached a duty of ordinary care by over-serving her, detaining her, letting her leave the premises with two drunken adults without calling a cab. And all those acts were found to be negligence in the state court case. That is binding here. And from your point of view, his vice principal's criterion is not satisfied by the fact that he owned the restaurant and that he went in and he got the shots in a little cup. And from his other side of the testimony, he clearly was in control of the restaurant. In other words, they weren't challenging anything he did. Well, if I understand the question, Judge Gellar, I think the answer is under paragraph 18, it was alleged that Deary was completely off duty that day. He was, in essence, a guest at his own restaurant. But, yes, he did go in. He got beer. Importantly, they used the two-ounce salad dressing cup as containers for the liquor, which, again, triggers the PICO exception. So at this point, I need to yield the floor to my co-counsel, and I'll save some time for rebuttal. All right. Will you reserve your rebuttal? Yes. Thank you. All right. Thank you. May it please the Court. Judge Owen, I think you answered or asked an important question, but you might not know half the answer, which is that Ms. Doe was passed out drunk at the hotel where she woke up where this man, three times her age, was on top of her. She would not have been passed out drunk but for having been served alcohol, by having been over served alcohol. So, yes, if a bar gets someone drunk and that person walks outside and a comet hits them, of course the bar is not liable. But if that person causes harm to his or herself or to others because they are inebriated, then the bar is liable. They're strictly liable in Texas for a dram shop. If Jane Doe had taken her own car and crashed into a family, the bar would be liable, 100%. If Jane Doe had walked outside and because she was drunk, Your Honor, walked into an open manhole, not because it was dark, but because she was drunk, then the bar would be liable. So a bar is liable for anything that is reasonably foreseeable from getting either a minor intoxicated or getting anyone over intoxicated. But even so, Your Honors, it doesn't matter. We have, after a three-day trial, a final judgment of the state court. This court has said time and again, and so it must be for judges to be respected, that when a court determines a fact that has happened, then that fact controls indemnification. That fact controls coverage. Here we have a state court judgment issued by a respected state court district judge upon a trial on the merits with this poor woman, I was there, being cross-examined in detail about the most intimate and horrible things that happened to her and that judge said what happened. And that judge said what happened is because she was served alcohol, in which case she would have never been in that position, because there was a manager on duty that allowed this to happen to her, because that manager on duty ignored negligently his duty to an invitee to safeguard her once he got her drunk or allowed her to become drunk. And I don't mean just drunk. I mean blind drunk to where she had to basically be carried outside. This is the essence of dram shop liability in Texas. There's a point I want to make to you guys. I'm a bankruptcy lawyer. We're judges. You're right. There's a point I want to make to the judges. The trustee and I were bankruptcy lawyers, so we're not coverage lawyers. We don't look at this from coverage perspectives, and we're not appellate lawyers. We're just people that know that when a bar purchases liability insurance and pays extra for liquor liability coverage and that bar overserves someone and that bar then gets liable for that, that is why you purchase liquor liability insurance. In other words, we're not trying to fit a square peg for a round hole. We're not trying to reinvent the world here. This is why people that sell intoxicants purchase liquor liability insurance. So to us, yes, we understand it comes down to certain technical details, but to us this is exactly why people purchase insurance from Century, people that serve alcohol. On the duty to defend, as Mr. Levenger was pointing out, it is a different standard. In other words, for indemnification we have to apply the facts as found by the judge. We cannot do what Judge Godbey did, which is just to say because there is no duty to indemnify, there is no duty, I'm sorry, because there is no duty to defend, there is no duty to indemnify. We know from this court, from two prior opinions from this court, that that is error as a matter of law. But if we look at the duty to defend, there are two immediate facts that Judge Godbey made that go to the heart of this matter. Judge Godbey said that Jane Doe alleged that Deary gave her rohypnol, and the fact, Judge Godbey found that the rohypnol was given to her defeated coverage. However, Jane Doe never, I'm sorry, she never alleged that she was served rohypnol by Deary. That is nowhere that she was given rohypnol by Deary, Your Honor. That is nowhere in her petition. So right then and there, this court has proof that Judge Godbey went outside the pleadings. Moreover, upon trial in state court, it was determined that she had not been given rohypnol. So again, we have now a final trial where Jane Doe was not given rohypnol, the date-break drug, yet we have Judge Godbey denying coverage based on an allegation that is not in the petition, Your Honor. Similarly, to go to your vice principal imputation, the reason why an owner is not per se a vice principal is because there are many owners that yield daily management or overall management to their directors and officers. There are companies with multiple owners. What did the record show with respect to Deary? I mean, was he there on duty so many days a week and off so many days or what? The record, Your Honor, at the actual trial now you're asking me, that this was his day off. He repeatedly had days off. He had another gentleman whose name we have a hard time pronouncing who was the manager, who was the vice principal on, and this was, to be blunt, this was Mr. Deary's drinking day. This was his drinking day. This was just a day when he went out and drank with his friends. He would not dare to work in any way, shape, or form. Thank you, Your Honor. All right. Thank you, sir. All right. Mr. Gilman. If it may please the Court, in a well-reasoned and thorough decision, Judge Godbey found that Century had no duty to defend or indemnify a lawsuit alleging that the owner of a restaurant sexually assaulted a young woman. Now, I'm going to go through each of them. The owner is completely irrelevant to the analysis here. What do you say about that? I think that's completely wrong, Your Honor. Why? The purpose of the vice principal allegation is to impute conduct of a business to those who control the business. Mr. Deary, as Judge Godbey found, was the owner and therefore was controlling the business. What do you say to their argument that he does not fit into any one of the four categories of vice principal? Well, it's true that in the GTE case, I believe it was, the Court listed four categories, but they were four categories of people who are allowed by the master to control, servants who are allowed by the master to control. Now, in GTE, obviously, GTE doesn't have an owner. But here, I think the facts, as alleged in the complaint, and the fact that he's an owner show that he fits into a category of someone who controls the business. They've alleged that he walked into the restaurant. They want to pretend that he's just some person who came in and sat down and ordered food or ordered drink. No, the allegations in the complaint are he went into the restaurant, walked into the refrigerator, just grabbed some beers out. He brought his own liquor into the restaurant. He went and got these salad cups, took the salad cups. This was all him doing something. Do you have any authority that says that the four classifications of vice principal are not exclusive? Well, I think we cited the King case, and in the King case, they didn't talk actually about vice principal, but they did suggest in that case that the owner, they did treat the owner as the business for purposes of insurance. And, you know, the— I mean, the sit-in in diversity, would we be permitted to go beyond and expand Texas law beyond what it actually said? Well, I don't think it's an expansion, Your Honor. I think that, as Judge Gabby said, he is the owner. And I'd also like to make one other point that I think is really important. In the trustees' brief, they sort of took a bit of an attack on us for not looking at any of the allegations in the original petition. But the original petition alleged not only that he was the owner, but that he was the president, and that he was the alter ego, and that he was a director. And those all clearly do fit within the categories. What they did was they just removed that from the Fourth Amendment complaint. But as the judge said, he was the—as Judge Gabby said, he was the owner. And they also did mention vice principal in there. I think what the judge said is they insinuated that he was a vice principal. It is essential to your argument that we find that Geary was a vice principal. No, the vice principal argument is important for the intentional acts exclusions. And if you find that he's a vice principal, then it's very easy to say that the intentional acts were the intentional acts of Pastazio's. And as Judge Gabby found, we win on that ground pretty easily. So if we found that he was not the vice principal, where are you then? No, because Judge Gabby actually ruled on two grounds. He had alternative grounds on the intentional acts exclusions. The other ground was that the conduct alleged was not negligence. It was intentional, that Pastazio's engaged in intentional conduct. I think the words from the complaint which he took were willful, malicious, and knowing. I think there might have been more, but those were the key— Whose intentional conduct are we talking about now? Pastazio's. Who was— They don't say in the complaint. They just say Pastazio's, knowingly, Pastazio's willfully, and Pastazio's maliciously. It doesn't actually say in the complaint who, but those are the allegations. But basically— Pastazio, though he was the manager— No, no. I'm sorry. Pastazio's is the name of the restaurant. It's the business, if not a person. Right, okay. Right. I'm sorry. I was just calling people. Sure. But who was the manager that night? There's only one factual allegation in the complaint that mentions a manager, and they don't mention that person by name in the complaint. So we're talking about intentional conduct. You're saying that the restaurant itself engaged in intentional conduct? That's what the complaint says, clearly, and that's what Judge Godbey found. And it says how does the restaurant act except through its agents? That's right. Who is the agent? The complaint doesn't say who the agents who were acting intentionally were. It could be the manager. It could be other people. The restaurant can't act intentionally, can it? Well, the people in the restaurant can act intentionally. Well, I know, but you have to designate somebody that acted intentionally to tag the corporation with that conduct. Well, it's the same as—the same corporation can't act negligently either. You have to tag a person. Right. So what they allege in their complaint was Pistazio's, which, as Judge Godbey took and as anybody reading the complaint would take, meaning the people who worked at Pistazio's, acted maliciously, acted willfully, and acted knowingly. And the other word was allowed. Allowed Ms. Doe to get drunk. Allowed Mr. Deary to grab the beers, to serve the alcohol, to get her drunk, and then ultimately rape her. Why doesn't this fall under DRAM Act liability? In other words, why aren't they—I mean you can't—why isn't that a defense to every DRAM Act case if you just— We're not arguing, Your Honor, that PPI has no liability in the underlying case. Our argument is that my client Century did not agree to insure that liability because it fits with—because it doesn't— they didn't issue a policy that would allow that. Insured who is Pistazio's. Is Pistazio's. Acted intentionally. That's correct. Insured, acted intentionally. Correct. As alleged in the complaint. As—but through unknown persons. That's right, Your Honor. I don't believe anybody is mentioned in the complaint other than Mr. Deary and Mr. Creca. I might be mispronouncing that name. He was Mr. Deary's friend but was not—apparently not associated with Pistazio's. Okay. I also want to note as I started that there are numerous other reasons why coverage does not exist here, and we briefed some of those, and I'd be happy to address those. Could we start with the liquor liability exclusion? Sure. I mean, which counsel adverted to before. I mean, the purchase of liquor liability, you know. The district court held that the exclusion applied. Explain that.  Okay. It's very simple, Your Honor. There should really be no doubt that the liquor liability exclusion itself applies. This was liability that arose out of causing the intoxication of the young woman and of serving an underage person. The only real question here is whether what Mr. Levenger called the PICO, the Products Completed Operation Hazard, removes the—basically undoes the exclusion. And I think Judge Godby's analysis of this was completely right. It only—the PCOH, the Products Completed Operation Hazard, only applies to, quote, your products. And what Judge Godby found was that there were three products at issue. One was beer, which he found was a product of pistachios or PPI. The second product was the Crown Royal liquor, which Mr. Deary bought from—as alleged in the complaint, bought from a liquor store. And the third was Rohypnol, which is an illegal drug. There was some debate whether Rohypnol fits within the liquor liability exclusion, but we think it clearly does because the liquor liability exclusion, while it has three prongs, A, B, and C— There was no finding in the state court's findings, effect, and conclusions of law about that drug. That's correct. So aren't we confined to what the findings, effect, and conclusions of law in state court were? No, Your Honor. It's actually the opposite with respect to the duty to defend. On the duty to defend— I'm talking about indemnify. Well, as we briefed and if we ever had to go back on this, we would deal with is we think that the judgment was collusive and non-adversarial. And in that case, the court wouldn't need—under Gandy and Hamill, the new case. Are you briefing that in state court? I mean I don't see—how can you—if you ever had to go back on that? Back to the federal district court, not the state court, Your Honor. We challenged the duty to indemnify on the grounds that the judgment was non-adversarial, which Texas law allows, and we cited both— Go back and attack the state court judgment? Yes, and that's clearly the law, and again, I refer to Gandy and Hamill. Okay, assuming— That's right, Your Honor, but it doesn't really matter because the liquor clearly was not a product of Pistazio's for the reasons that Judge Godbee found, and that is that— That was also in the state court judgment that he bought the Crown liquor, black or whatever. Yes, it's a finding of fact. There are only like three or four relevant findings of fact in the state court judgment. There are about seven paragraphs of it. Let's assume that the date rate drug was not administered. Sure. Drop that out of your argument. So the liquor was not a product of Pistazio's because it was bought from the outside. It's not a product they sold because they didn't have a liquor license to sell that product. They didn't have a license to sell liquor. That's alleged in the complaint as well. So where do you go? You go and you look at what the liquor liability exclusion says. It says it applies—it does not apply to claims within the product's completed operation hazard. So if all the claims are within the product's completion operation hazard, then the liquor liability exclusion doesn't apply. But where do you get the all piece? And that comes from—that comes directly from the language of the liquor liability exclusion, which says that Century has no duty to defend or indemnify and there is no coverage if any proximate cause of an occurrence arises out of liquor liability. So it's liquor liability unless it's in the PCOH, but if there's any liability that arises out of—that's proximately caused by liquor liability, in this case the Crown Royal, then there's no duty to defend or indemnify the claim or suit. So as long as the liquor is not within the PCOH, then there's no duty as to the entirety of the lawsuit. And that's exactly what Judge Gobbey found and— No duty to indemnify or duty to defend or—assuming they're separate duties. Actually, the plain language of the exclusion says no duty to defend or indemnify. It's absolutely both, Your Honor. That's the plain language. And what the appellants argue is that as long as one product is within the product's completed operations hazard, then the entire suit has to be covered. And that's exactly backwards. That's just—turns the language of the policy on its head, and I understand why they want to do that because, you know, they want to do that because that's what could possibly get them this duty to defend. But it's—our interpretation and Judge Gobbey's interpretation is the only reasonable interpretation of the policy, and it's mandated by the policy's plain language. They also make several other arguments, Your Honor. They argue that the liquor liability exclusion doesn't apply because Deary brought the liquor from the outside and was not insured, and this is one of the reply briefs in page 10. I didn't really understand this argument. The exclusion applies to claims where a plaintiff is seeking to hold the insured liable for contributing to intoxication or serving a minor, and that's exactly what the complaint alleges here. And then finally, well, they argue about the salad cups, that somehow the salad cups transform this product that was purchased from outside of Pistazios or PPI to a PPI product. There's no analysis of that. There's no explanation of how that could be. There's no—and it really sort of defies logic that somehow Deary, who's the owner of the restaurant, walking out and getting a couple of salad—just grabbing a couple of salad cups transforms alcohol that PPI did not have a license to sell into PPI's product. And I think Judge Gabbi made a great point, is that's ultimately a self-defeating argument for the appellants because once that happens, you have—if you make that finding, then all of a sudden you're right in the criminal acts exclusion. I mean, you know, they'd be providing unlicensed alcohol to a minor. That's clearly a criminal act that would preclude coverage under a separate exception. We've talked a little about the intentional acts exclusion. As I mentioned for those, Judge Gabbi found that it was applicable on two grounds. First, he found that despite the attempt to assert negligence claims against Pistazios, the complaint in fact alleged intentional conduct. And again, those allegations are that Pistazios willfully detained Doe, that Pistazios' conduct was knowing and malicious, and that Pistazios allowed Deary's conduct to occur. Those are not allegations of negligence. He also found that Deary was a vice principal, and we've talked about this. I do think the GTE case, the Chrysler case, and cases like that fully support our argument. Judge Gabbi had no difficulty finding that he was a vice principal based on the fact that he was the owner and the inclusion of the term vice principal in the allegations as well as, you know, there were the previous allegations that made— Did he cite authority for that? I'm sorry? Did he cite authority for his conclusion that he had no trouble finding it? He did cite the GTE and the Chrysler case, but those were more for the impact of the finding of vice principal. And, you know, the appellants seem to suggest that you can't have such a vice principal finding unless they affirmatively allege he is a vice principal. But again, I think Judge Gabbi looked at the factual allegations, determined that Deary had the sufficient control to be a vice principal. And, you know, I think this comes straight from the complaint. They also argue that he was acting outside the scope of his authority. So—and obviously not everything a vice principal does would be imputed to the restaurant. I mean, if he was on a vacation and did something somewhere else, you wouldn't impute that conduct to the restaurant. But the very conduct they're alleging here relates to the restaurant. The complaint alleges that Deary went into his restaurant, got beers from his restaurant, served those beers in his restaurant, went and got salad cups from his restaurant, and served liquor in his restaurant. While on vacation. What? While on vacation. Well, I don't think he was on vacation. I don't think there's any allegation to that. Well, I mean, they—I guess. Well, I mean, if he was—let's say if he was in New Orleans having a good time and did something in somebody else's restaurant. But that's the conduct for which Doe sought to hold Pastazio's responsible. And the fact that all this happened in Deary's restaurant means that he was acting in a way that was related to his business. They also argue in the coverage A that the injury Doe sustained was not expected or intended by Pastazio's. But they're ignoring the policy language, in particular the definition of occurrence, which says that all bodily injury or property damages arising out of an occurrence or series of related occurrences is deemed to take place at the time of the first such damage or injury. And so that defeats their argument right there. They also ignore the plain language of the policy in Judge Gabbi's finding that the exclusion applies to injury intended or expected from the standpoint of any insured. And if Deary is an insured, which he is because he was acting with respect to his business, then the exclusion applies because he's any insured. And this is what he was doing when he was serving the beers and the liquor. They try and get around this by pointing to the separation of insured provision in the policy, but that doesn't work. We cited the Harper case, which was directly on point. They agree it's on point. That's a Wyoming case. They argue that the law is different, and they cite the Keegan case. But Keegan involved policy exclusions that use the term uninsured but not any insured. And that's all the difference, and that makes Keegan totally irrelevant here. And I'll point the court to two cases, Bituminous case court versus Maxey at 110 Southwest 3rd, 203, and Hodges versus Safeco is 438 SW 3rd, 698. Both of those cases say that if the exclusion clause uses the term not insured, application of the separation of insurance clause requires that the term be interpreted as only referring to the insured against whom a claim is made under the policy. If, however, the exclusion clause uses the term any insured, then application of the separation of insurance clause has no effect on the exclusion clause. A claim made against any insured is excluded. I see my time is up. Is Deary still serving time in prison? I do not know the answer to that. I know he pled guilty to the crime. You don't know what kind of sentence he got? I'm sorry? You don't know what kind of sentence he got? I do not, Your Honor. All right. Thank you. Back to you, Mr. Levenger, first. The central problem in their argument is they ignore Texas law and duty to defend, which says that if any allegation, if any allegation is potentially covered, then they have a duty to defend the entire suit. And they say that PPI acted intentionally. That's just absolutely false. The allegation and ultimately the proof of trial is that PPI acted negligently. And, by the way, it's not an intentional acts exclusion. It's expected or intended injury exclusion or knowing violation of rights of another. How much were the duty to defend costs? What were the duty to defend costs? How much were the defense costs? I don't know, Your Honor. We never got to that point of even determining what they were. Obviously, the duty to indemnify on remand, there would have to be a determination of what the damages were that were subject to the duty to indemnify. There would have to be some assessment of that. But we didn't get to that point either. The other key case that they don't cite at all, didn't cite in their brief, and didn't cite today is the Texas Supreme Court's most recent decision on vice principal law and imputation, Bennett v. Reynolds. Bennett v. Reynolds says that there are four categories of vice principal. They're exclusive. There was no allegation or proof here that Deary fit within those four. More importantly, Bennett v. Reynolds says that just because somebody's a vice principal doesn't mean that anything and everything that person did is automatically imputed to the corporation. To the contrary, Bennett v. Reynolds says that when the vice principal acts in his personal capacity unrelated to his authority, the corporation is not bound. And all the allegations here and all the proof here was that Deary acted in a personal capacity at all times, both on and off the premises. He was drinking all afternoon. He was entertaining his friends. And he was plying dough with alcohol. And he was acting personally for his own purposes. To be sure, when he was off the premises sexually assaulting her, he expected or intended that injury. But he was not an insured. And that's the other problem in the court's opinion. He didn't meet the definition of an insured at that time. Thank you, sir. Last word. Thank you, Your Honor. Judge Owen, if we look at the liquor exclusion, the language that opposing counsel was referring to, in bold font it says this exclusion does not apply to claims within PCOH. This exclusion. Therefore, the moment that beer, which is certainly PPI's product, is present, this exclusion no longer applies. So with due respect to Judge Godby, the presence or not of the liquor, the ownership or not of the liquor, the salad cups doesn't matter because the policy that they wrote says this exclusion does not apply. Now, if it's not as simple or clean as I make it seem, then we have the rules governing how one treats exclusions. All reasonable inferences must be drawn against the insurance company. Any potential ambiguity in the language must be drawn against the insurance company. Because we're dealing with an exclusion, a hyper strict standard of judicial review applies. So, again, even if the court doesn't agree with me per se, there is at least enough ambiguity here to conclude that the insurance company should have defended. Now, on the duty to indemnify, it's different because, again, we have the actual findings and those findings would be binding. Judge Jolly, to your point, the imputation of Deary's actions is absolutely critical to both Judge Godby's opinion and to Century's defense because otherwise we're dealing with the Supreme Court of Texas opinion in King and we're dealing with the separation of insureds. And I would, sir, just submit to you that if you agree with Judge Godby, then you are agreeing that an owner, anytime he's on premises, perhaps not even the only owner, but the owner, anytime he's on premises, he is per se the corporation. And that would basically be against 100 years of Texas precedent that separates a corporation from its owners. You would basically be alter egoing every single case, any single time that an owner happens to be on premises. And that is the only way that Judge Godby's opinion counts because otherwise anything that he put in there is from outside the pleadings. Again, he found that Dill had pled that Deary had the power to hire and fire employees. That is nowhere, Your Honor, in her pleadings and I challenge a police counsel to suggest that it is. There was some language, it is true, about potentially Deary being a vice principal. It was pled in the alternative. And again, we know from this court's precedent that a plaintiff can plead in the alternative. It doesn't change the end result. And we know, as Mr. Levenger said, that so long as one cause of action is potentially within coverage, the whole must be defended. And that did not happen here. And we haven't even discussed the pleading about false arrest and the actual findings of trial that there was false arrest, which clearly implicates coverage B. Your Honors, allow me please humbly to beg forgiveness for my prior slight of language. I am not a professional appeal lawyer. And thank you for your time. Don't worry about that. All right. All right. Thank you, Counsel. This is a roll call.